[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION CT Page 9718
This is a suit for dissolution of marriage brought by the plaintiff husband against the defendant wife. The parties were married on October 5, 1974 in East Haven, Connecticut. There are two children issue of the parties: Nathaniel, age 11, and Megan, age 9, both of whom are residing in the family home at 104 Ironworks Road in Clinton, Connecticut with the defendant. The plaintiff is currently residing in the garage at his family's house in Westbrook.
The plaintiff was 38 years of age in September and the defendant is 38 years of age. While the plaintiff had a cancerous melanoma removed in August, 1985, he has had no further developments in this seven year period and a current physical examination was negative. He is otherwise in good health. The defendant is in good health but is on medication for stress and migraine headaches. She is seeking counseling at Catholic Family Services once a week.
The plaintiff is a certified public accountant. He is, at present, self-employed. He graduated from East Haven High School in 1972 and entered the University of New Haven in 1973 in night school. In 1974 he switched and went to college days and worked full time for the FBI as a security patrol clerk nights earning $13,000.00 — $14,000.00 per year. He graduated from college in June, 1977 with a Bachelor of Science degree in financial accounting. At that time he went to work in the New Haven office of Deloitte, Haskins and Sells. It was also at this time that he began studying and taking his CPA exams. He passed his CPA examinations and then earned $12,000.00 per year with Deloitte, Haskins Sells. When he left that office in 1980, he was earning $26,000.00 per year. He set up office with a partner which partnership occupied two offices, one in Clinton and one in Cheshire. This partnership lasted until the summer of 1982 when the partnership terminated. At that time each partner was earning $25,000.00 per year.
The plaintiff then set up his own office in Clinton until 1986. In 1982-83 he earned $30,000.00 — $40,000.00. In 1984-85 he earned $40,000.00 — $50,000.00 and in the late 1980's CT Page 9719 $80,000.00. In 1986 he established an office at 138 East Main Street in Clinton and his practice continued to improve. In 1990 he earned $123,000.00. After 1990, for numerous reasons, the plaintiff's business declined. His income for 1991 was $85,381.00 (see plaintiff's exhibit H). For the year 1992 the plaintiff projects earnings of $46,953.00. His revised financial affidavit shows net earnings of $534.00 per week after deductions for self-employment tax, federal and state income tax and health insurance. On an annualized basis, that affidavit shows gross annual income of $45,953.00 and net income after the deductions noted above of $27,768.00.
The defendant is a full time student at Southern Connecticut State University and has just completed the requirements for her Bachelors of Arts degree in communications. She now is pursuing a Master of Science degree to become a speech pathologist and will complete such a program in two and one half years by going to school full time year round. For training in speech pathology she must be available during the day for practical work. She is cleaning houses to get by and earns $90.00 per week but expects to gain another customer and earn $110.00 per week. Current pendente lite orders provide for $625.00 to be paid by the plaintiff to the defendant. The plaintiff, however, has been unable to pay these amounts and since May 8th has accumulated an arrearage of $8,335.00 to August 28th.
The finances of the parties are in disparate shape because of the serious decline in the plaintiff's business. In 1986 the plaintiff and one of his clients purchased an office building at 138 East Main Street in Clinton. Since he could not officially own property with a client and certify that client's statement, he formed a partnership with the defendant as partner with the client, and it is that partnership which owns the Clinton office building. The plaintiff's financial contribution was $45,000.00 which was borrowed on a home equity loan. The plaintiff maintains that at one point the property was worth $500,000.00 to $525,000.00. The property is presently listed for sale at $250,000.00. The partnership known as R S Properties is owned one half by the defendant and one half by the client, Gregory Raucci.
There has been no capital contribution by the plaintiff to the continued operation of this partnership, and Mr. Raucci, who testified at the trial, will have to take action CT Page 9720 to cover operating expenses since June, 1991. There are no tenants left in the building. Mr. Raucci has contributed $31,233.80 toward the operating expenditures of the building as of August 31, 1992 and is owed 50 per cent of that amount.
In 1979 the parties purchased the current family residence at 104 Ironworks Road in Clinton. The defendant and the children continue to reside in the family home. The parties separated in April, 1991, and the plaintiff commenced this action in July, 1991. It is his claim that the marriage broke down because he was upset upon learning in 1990, when the parties were in counseling, that the defendant had had an affair in 1980 with her boss. The defendant testified that she felt the plaintiff was resentful of her returning to school and successfully accomplishing all that she had. She has managed to obtain scholarships and to arrange financing to complete her education in spite of the deplorable financial situation of the parties, and she is determined to accomplish her goals for her career.
Prior to their marriage, the parties agreed that the plaintiff would pursue his education, obtain his bachelor's degree, and obtain his license as a certified public accountant; the defendant then would return to complete her college education and establish her career. The defendant did suspend her educational career and kept working until 1981 when Nathaniel was born. She returned to college in the fall of 1989 as soon as Megan entered kindergarten. She met with resistance and resentment from the plaintiff when she returned to school. When she asked the plaintiff to assume some of the household chores to releave her burdens, he refused to do so and insisted that she continue to perform all of her duties and responsibilities as a wife, mother and homemaker.
The court attributes the breakdown more to a change in the plaintiff's attitude towards life rather than his claimed upset over the defendant's affair ten years earlier. The defendant believed they had dealt with the problem of the affair, that the affair was over in 1981 and that she had continued her commitment to the marriage for ten years and was willing to continue to do so.
Another area of controversy is an amount claimed by the plaintiff to be owed to his father for the construction of a swimming pool at the family home in 1987. The plaintiff has CT Page 9721 treated this money as a loan and set up a schedule of amortization. No note was signed by either of the parties. The amount of money advanced by plaintiff's father was $20,000.00. For the first year and nine months of 1989, the plaintiff made principal payments and paid interest on the unpaid balance at nine per cent. It is the plaintiff's claim that $17,377.00 was due to his father as of August 31, 1992 including interest at 9 per cent (see plaintiff's exhibit S). The defendant testified that this loan was forgiven by the plaintiff's father. Since there was no acknowledged evidence of indebtedness, the court shall order that this responsibility, if there is any, is entirely that of the plaintiff.
The defendant testified that she has received demand letters from the banks holding the first mortgage and the home equity loan and demand for payment from the utility companies. These payments are delinquent as a result of the plaintiff's failure to make payments in accordance with the pendente lite orders. As of August 27, 1992, there was an arrearage of $8,335.00. There are outstanding medical and dental expenses for the defendant and the children which are the obligation of the plaintiff under the pendente lite orders.
During the period of the pendente lite orders, the plaintiff managed to take a five day vacation to Arizona with a female friend that he met two months after leaving home; he paid down a debt that he owed to his father; and in 1992 used his line of credit to pay approximately $4,000.00 of his personal expenses. Admittedly, those were done when he was not behind in his payments to the defendant but were done immediately after the tax season when he knew from past experience that he should reasonably have "squirreled money away" to meet expenses later in the year.
The court finds that the plaintiff is not earning to his fullest capacity. He, himself, testified that he is at his office from 10:00 a.m. to 3:00 p.m. five days per week. This does not represent full time employment. The court, in reaching a decision on the issue of unallocated alimony and support, is basing that determination on the plaintiff's demonstrated earning capacity. As previously noted, the plaintiff has projected annual earnings for 1992 in the gross amount of $45,953.00 and a net income of $27,768.00. His net income from the business before self-employment tax and state and federal income tax was $85,381.00 (plaintiff's exhibit H). The court CT Page 9722 finds that the plaintiff has an earning capacity and bases its orders on a net annual income of the plaintiff from his business of $65,000.00, a net after self-employment tax, state and federal income taxes of $50,000.00 upon which is based an unallocated order of alimony and support of $500.00 per week. This is $125.00 less than the defendant is requesting and $190.00 more then the plaintiff is requesting.
In determining alimony and the proper orders in this case, the court must consider the factors set forth in 46b-81,46b-82, 46b-84 and 46b-62 of the General Statutes. With respect to alimony, support and a division of the property of the parties, the law to be considered has been stated as follows:
 To begin with, our alimony statute does not recognize an absolute right to alimony, General Statutes 46b-82; Thomas v. Thomas, 159 Conn. 477, 487, 271 A.2d 42 (1970); `This court has reiterated time and again that awards of financial settlement ancillary to a marital dissolution rest in the sound discretion of the trial court.' (Citation omitted.) Although the court is required to consider the statutory criteria of length of marriage, causes for dissolution, the age, health, station in life, occupation, amount and sources of income, assets and opportunity for future acquisitions of assets of each of the parties, (citation omitted), no single criterion is preferred over all the others. In weighing the factors in a given case, the court is not required to give equal weight to each of the specified items. Nevertheless, it is rather obvious that in making financial determinations, the financial circumstances, both actual and potential, are entitled to great weight. Valente v. Valente, 180 Conn. 528, 530
(1980); Watson v. Watson, 221 Conn. 698, 710
(1992).
As has been said by the Appellate Court in the recent case of Emanuelson v. Emanuelson, 26 Conn. App. 527, 530, 531
CT Page 9723 (1992):
 "General Statutes 46b-81(c) requires the trial court to evaluate certain factors before distributing the parties' assets in a marital dissolution action. Although the court must evaluate all the factors listed, it has broad discretion when applying the statutory factors to assign the parties' assets. O'Neill v. O'Neill, 13 Conn. App. 300, 312, 536 A.2d 978, cert. denied, 207 Conn. 806, 540 A.2d 374 (1988) . . . .
 The statutory factors for determining alimony in 46b-82 are almost identical to the factors used to distribute property in 46b-81(c)."
The court has considered all of the criteria of46b-81, 46b-82 and 46b-84 of the General Statutes together with 46b-62 of the General Statutes and the Family Support Guidelines together with all of the evidence and the case law. Since "[i]t would serve no useful function to require the trial court ritualistically to rehearse the statutory criteria that it has taken into account," Scherr v. Scherr, 183 Conn. 366, 368
(1981), this court will not recount those statutory criteria and the evidence, other than as has been previously stated. "The court is not obligated to make express findings on each of these statutory criteria." Weiman v. Weiman, 188 Conn. 232, 234
(1982).
Suffice to say that the court must consider all the statutory criteria in determining how to divide the parties' property in a dissolution proceeding, Leo v. Leo, 197 Conn. 1, 5
(1985), and that the court need not give equal weight to each factor. Kane v. Parry, 24 Conn. App. 307, 313-14 (1991).
The court, in addition to the foregoing findings, finds as follows:
1. There is the requisite jurisdiction.
2. The allegations of the complaint have been proved and are true.
CT Page 9724 3. There has been an irretrievable breakdown of the marriage.
4. While both parties must bear some responsibility for the breakdown of the marriage, the plaintiff is the one at greater fault than the defendant.
5. As previously noted, there is an arrearage as of August 28, 1992, the last trial day, of $8,335.00.
The court enters the following orders:
1. A decree of dissolution of the marriage shall enter on the grounds of irretrievable breakdown of the marriage.
2. Custody and visitation shall be in accordance with the parties' stipulation regarding the same dated August 12, 1992, the terms of which shall be referred to in the judgment when it is prepared and incorporated therein by reference.
3. The plaintiff shall pay to the defendant the sum of $500.00 per week as unallocated alimony and support effective August 28, 1992, with credit for those payments made since that date and the amounts under that amount being added to the arrearage found by the court to that date of $8,335.00. Since the plaintiff is, at present, self-employed, no order is entered regarding wage withholding.
4. Unallocated alimony and child support shall terminate upon the defendant obtaining full time employment in her profession as a speech pathologist (with the exception of a fellowship position in that field) or on June 15, 1997, or upon the death of either party or the defendant's remarriage, whichever shall first occur. Upon the termination of the unallocated alimony and child support, alimony shall be payable at a rate of $1.00 per year and shall terminate upon the first to occur of the following events: the death of either party; the defendant's remarriage; or June 14, 2002. Alimony shall be nonmodifiable as to term.
5. Upon the termination of unallocated alimony and child support, child support shall be payable in accordance with the Family Support Guidelines as then in effect and in accordance with the parties then financial circumstances. CT Page 9725 If the parties are unable at that time to agree on the amount of child support, they shall return to court for further orders. The parties shall share equally in the cost for the children's parochial school education through high school or until the eighteenth birthday of each child, whichever first occurs.
6. The plaintiff shall maintain medical and dental coverage for the minor children for so long as they are eligible as dependents under the terms of the policy. He shall be responsible for all unreimbursed medical and dental expenses for the minor children until the defendant obtains full time employment in her field as a speech pathologist (with the exception of a fellowship position in that field) or until June 15, 1997, whichever event first occurs. Thereafter, the parties shall share equally all of the unreimbursed medical and dental expenses for the minor children.
 If coverage for the minor children is available to the defendant through her employment, she shall maintain said coverage so long as there is no additional cost to her. The defendant shall have the benefit of the provisions of 46b-84(c).
7. The plaintiff shall continue to pay for medical coverage for the defendant for a period of one hundred and fifty-six (156) weeks following the entry of the decree dissolving their marriage in accordance with the provisions of 38a-538 of the General Statutes. Thereafter, the defendant shall be responsible for the cost of said coverage.
8. The defendant shall retain all right, title and interest in and to the real estate at 104 Ironworks Road, Clinton, Connecticut, free of any claim or demand by the plaintiff. The defendant shall assume liability for the first mortgage and the home equity line of credit and shall indemnify and hold the plaintiff harmless thereon.
9. The plaintiff shall be responsible for any and all liability incurred by the defendant as a result of her interest in R S Properties, including but not limited to: any losses or liabilities by reason of her own bankruptcy as well as any losses, liabilities or deficiencies incurred by reason of any future voluntary or involuntary bankruptcy CT Page 9726 in which R S Properties is involved. This obligation is considered to be in the nature of support and maintenance for the benefit of the defendant and is, therefore, non-dischargeable in bankruptcy.
10. The plaintiff shall pay as counsel fees to the defendant the sum of $5,000.00 which sum shall be payable within one hundred eighty (180) days of the entry of the decree dissolving the marriage of the parties.
11. The parties shall assume liability for those debts listed on their financial affidavits, and they shall indemnify and hold the other harmless thereon.
12. The unallocated alimony and support received by the defendant shall be taxable to her in accordance with 71(a) of the Internal Revenue Code and deductible by the plaintiff in accordance with 215 of the Internal Revenue Code. The defendant shall be permitted to claim the minor children as dependents for income tax purposes, both state and federal, so long as the orders for unallocated alimony and support are in effect.
13. The office Kimball furniture consisting of a desk, couch, swivel chair and two side chairs shall be sold by the plaintiff. The desk and swivel chair shall be replaced by the plaintiff by a suitable desk and chair for the defendant. If such replacement desk and chair need be purchased by the plaintiff, the difference between the cost of replacement and proceeds realized on the sale of the Kimball furniture shall be applied to the arrearage as previously found.
14. The custody of the childrens' baseball card collection shall be with the plaintiff as trustee for the benefit of the children. The plaintiff shall maintain his own baseball card collection for the benefit of the children. "For the benefit of the children" does not mean that the collection or the proceeds thereof shall in any way satisfy the plaintiff's obligations for support.
15. Photos of the parties and the children shall be divided between the parties. Copies shall be made of any photographs which do not lend themselves of division, the expense thereof to be divided equally between the parties. CT Page 9727 The Epply framed lithographs (3), the two sets of golf clubs and bags, table saw and side tables, bow, guns and cabinet and pool refrigerator shall be the property of the plaintiff free of any claim or demand by the defendant. The plaintiff shall have the camcorder in exchange for the VCR. The eight foot tractor, billiard table, pool furniture and full length fox coat and the remaining contents of the home at 104 Ironworks Road in Clinton shall be the property of the defendant free of any claim or demand by the plaintiff.
16. The plaintiff shall reinstate and maintain the $300,000.00 term life insurance policy on his life made available through his professional association of accountants. The children shall be named as irrevocable beneficiaries thereof, and plaintiff shall furnish appropriate proof to the defendant of payment of premiums and designation of beneficiaries upon request by the defendant and at least annually. Said obligation shall terminate upon the youngest child attaining 18 years of age or the unavailability of the policy through no fault of the plaintiff.
17. The plaintiff shall be wholly responsible for the bills set forth in defendant's exhibit 10 and shall reimburse the defendant for the expenditures she has made in the amount of $716.71, which reimbursement shall be made within ninety (90) days of the date hereof. The plaintiff shall indemnify and hold harmless the defendant with regard to these outstanding liabilities.
18. The balance of the arrearage after the apportion of the proceeds of sale of the Kimball furniture shall be paid on or before April 15, 1993.
19. The assets, except as noted above, as reported in the plaintiff's financial affidavit shall be his free of any claim or demand by the defendant.
20. Except as previously noted herein, the assets listed in the defendant's financial affidavit shall be hers free of any claim or demand by the plaintiff.
21. Except as previously noted herein, the plaintiff shall be responsible for the liabilities listed in his financial CT Page 9728 affidavit including the amounts owed to R. W. Stephens and shall indemnify and hold harmless the defendant from any claim or demand thereon.
22. Except as previously noted herein, the defendant shall be responsible for the liabilities listed in her financial affidavit and shall indemnify and hold harmless the plaintiff from any claim or demand thereon.
Judgment shall enter in accordance with the foregoing.
EDGAR W. BASSICK, III, JUDGE